598       Cogel *et al.* *v.* Kniseley.       [Sept. T.

Opinion of the Court.

Christopher Cogel *et al.*

*v.*

Abraham J. Kniseley.

1. Sale—*fraud in not disclosing patent defects.* A vendor of an engine which has been through a fire is not bound to disclose the fact of cracks in the bed which are visible on inspection, where the buyer examines the same, and the vendor does nothing to conceal the defects or prevent the purchaser from detecting them; and for a failure to make such disclosure he can not be held guilty of a fraud.

2. It is only concealed defects, known to the seller, that he is bound to disclose to the buyer. In the sale of a second hand engine the seller is not guilty of a fraud in not disclosing the fact that it had before been subjected to a fire, when he had, before the sale, caused the same to be overhauled and repaired so as to make the same able to perform such service as he represented to the buyer, where the proof does not show any material injury caused by the fire, and the purchaser, before the sale, has the same examined by an experienced engineer, though on a cloudy day and in a room indifferently lighted. The fact the purchaser would not have bought had he known the engine had been through a fire, will not change the rule.

Appeal from the Circuit Court of Cook county; the Hon. W. K. McAllister, Judge, presiding.

Mr. T. C. Whiteside, for the appellants.

Mr. Frank J. Smith, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

This was an action brought by Kniseley, to recover from Cogel and Betchter the price they had contracted to pay for a steam engine sold by the former to the latter. On a trial in the court below defendants set up and relied on fraud in the sale of the engine, as a defense. The jury found a verdict in favor of plaintiff, and, after overruling a motion for a new trial, the court rendered a judgment against defendants on the verdict. Defendants thereupon prayed and perfected an appeal to this court, and urge a reversal.

The parties, to condense and reduce the case to a small compass, and narrow the questions to be discussed, have agreed upon the facts that are established by the record, and agree that the case shall be tried by this court on the stipulation as to the facts.

After agreeing on the facts, they make this stipulation:

" It is further agreed between the parties to the above action, that the sole question of law arising in this case, to be certified to the Supreme Court, is, whether or not the plaintiff, in that he did not voluntarily disclose to Cogel or Robson the existence of the above described cracks in the engine bed, and the fact that it had been through the Chicago fire, was guilty of such fraud as to justify the defendants in rescinding the sale *in toto.*

'' And if the Supreme Court shall hold that the plaintiff's omission to disclose to Cogel and Robson the existence of the said cracks, and the fact that the engine had been through the Chicago fire, was a fraud on the defendants, such as would warrant a rescission of the sale, then the judgment below shall be reversed and a new trial granted ; otherwise the said judgment to be affirmed."

It is agreed that the engine in question was in a building on the South Side, in Chicago, among the first that were burnt on that side in the fire of October 9, 1871 ; that the heat was not sufficient to melt any of the smaller metal bearings and connections of the engine, nor to take the temper out of a steel chisel which laid on the engine bed ; that appellee purchased the engine for his own use, intending to make brick, and had it repaired and placed in position for use, but, failing to procure a contract he had expected to get, it was not used. He gave for it $2,000 more than defendants agreed to give him, owing to the fall in the price of such machinery.

Appellants made the purchase by defendant Cogel, assisted by Robson, appellants' engineer, a man of many years experience. Among other establishments they went to James,

Roach & Spencer, dealers in engines. That firm not having an engine such as appellants desired, Roach informed them of this one, saying, though not a new one, it was, he thought, such as they wanted. Thereupon they started to see appellee at his office, but meeting him on the street, Roach informed him of their business, and appellee requested Roach to take Cogel and Robson and show the engine to them. Roach did so, when Cogel and Robson examined it pretty thoroughly. It was set up on a stone foundation, bolted down and adjusted, with all connections ready to put in motion. The day was cloudy, and the engine room rather indifferently lighted by windows and a door, yet a careful inspection would have disclosed the cracks in the engine bed; but they were not noticed or discovered by Cogel or Robson until the engine arrived at Red Wing, where it was intended to be used.

The next day the sale was made. The engine was placed on the cars and shipped to Red Wing, and on its arriving at that place defendants discovered the cracks and refused to receive it, and protested a draft drawn on them by plaintiff for $2000, the balance of the price agreed to be paid. When the contract was closed they paid $600.

In bargaining for the engine Roach carried propositions between the parties until they arrived at an agreement, and the bargain was closed. He, or his firm, however, had no interest in the transaction further than to prevent a rival house from making a sale, and to get commissions on a new heater sold in connection with the engine.

Plaintiff knew there were three cracks in the engine bed, and that the engine had been through the fire, but claimed these facts did not materially injure the engine, as it had been thoroughly repaired ; that he supposed, but did not positively know, that Cogel and Robson were ignorant of the facts ; that he volunteered no information on the subject. He did not, however, do or say anything to mislead them before or at the time they purchased. Plaintiff admitted that the engine would not sell as readily in market with the cracks, as without them, and

defendants would not have purchased the engine had they known of the cracks or that it had been through the fire. As to whether the engine was materially injured by the cracks, the evidence was conflicting. It is conceded that $300 would have purchased a new engine bed.

Appellee executed this instrument at the time of the sale:

*"Chicago, January* 10, 1874.

"The Elms engine at Austin is all complete as shown ; is made in a workmanlike manner, and will perform well with proper care and attention on the part of the users of the same, if erected in a workmanlike manner on good foundations.

A. J. KNISELEY."

No other warranty was asked or given.

Was appellee guilty of a fraud in failing to disclose the facts that there were cracks in the engine bed, and that the engine had been in the fire? All the authorities agree that a vendor of personal property need not point out to the buyer open, visible defects in the property ; and failing to do so constitutes no fraud, unless he adopts means to conceal them, or to prevent the buyer from discovering them. As to all such defects the buyer acts at his peril. This rule is recognized and acted upon in all commercial communities. If the buyer is unwilling to risk his judgment in detecting defects that are open and visible, he should require a warranty against them. In this case appellants did exact, and appellee did give, a written warranty that the engine was all complete as shown,—that it was made in a workmanlike manner, and would perform well with proper care and attention, if erected in a workmanlike manner on good foundations. They required no warranty as to the soundness or perfection of the various parts of the machine, except as it was shown to them. This would seem to dispense with such a warranty, and that, as it was shown to them, they risked all open and visible defects.

There was nothing to prevent appellants from seeing the cracks in the engine bed. They were open, visible, and fully exposed to view, and had appellee been present he would

have had every reason to suppose they had seen them. As he was not there when they examined the engine, and as they asked no questions in reference to the cracks, he had the right to suppose they were seen and known. Robson, an experienced engineer, aided Cogel to make the examination, and it was natural for appellee to suppose he would discover all patent defects or blemishes that might be regarded as material to its use or sale. He had been brought with Cogel for the express purpose of using his skill in examining the engine. Nor does it matter that the day was cloudy, or the room not well lighted, as there is no pretense that appellee in any manner contributed to either. But, independent of all these, appellee was not bound to disclose the fact that these three cracks existed, inasmuch as they were visible; and having done nothing to conceal them, or mislead appellee from detecting them, he can not be held guilty of a fraud in not disclosing them.

Was he, then, guilty of a fraud in not disclosing the fact that the engine had been in the fire? Appellants knew they were not buying a new engine. They were told it had been used, and there is no claim that it was otherwise represented. In purchasing it as a second hand engine that had been used, they had no reason to suppose they were getting as perfect or valuable a machine as if it were new. It is true, Roach said to them that it had been used some, but he thought it as good as new. Nor is there anything in the agreed facts to show he was in the slightest degree mistaken.

No one would claim that a person selling an engine that had been used, and that fact known to the buyer, would be guilty of a fraud, if he failed, unasked, to disclose how often some of its parts had been injured and repaired; or, that parts had been broken and supplied with others. It is conceded that appellee said to Robson that he knew it had been through the fire, but claimed that did not materially affect or injure the engine, because it had afterwards been overhauled and thoroughly repaired at the shops of Elms & Son. If appellee

believed this, there was no reason for him to disclose it, as he did not believe there was any defect in the engine. It is only concealed defects, known to the seller, that the seller is bound to disclose to the buyer. If the seller has no knowledge of defects that are latent, he can not be held to have committed a fraud because he did not make them known to the buyer. Here, there is nothing to show that the engine was injured by the fire, or that it would not last as long or perform as much labor as if it had never been subjected to the fire. It seems not to have been defaced or to have shown any marks of the fire, as they would have been detected by Robson when he examined it before the purchase.

We can not judicially know that the amount of heat to which this engine was subjected, in any manner or for any purpose had injured it. It is constructed of iron, and observation teaches that moderate heat does not injure iron for any purpose, and the degree of heat in this case could not have been injurious, as the temper was not drawn from the steel chisel that was lying on the engine bed, and, we presume, subjected to as great heat as any part of the engine. If the engine was not, in fact, injured by the heat, then there was no latent defect to disclose. Appellee supposed there was none, nor do the facts show there were any defects beyond the cracks in the engine bed, and as they were patent, he was not bound to call the attention of appellants to them. Nor does the fact that appellants would not have purchased had they known of the cracks, and that the engine had been in the fire, prove fraud. Appellee was not bound to know their choice in such matters. He was only bound to see that he did or said nothing to deceive, and that he disclosed all latent defects. Appellants, for aught that appears, might not have been willing to purchase if they had been informed the iron in the engine was of a particular manufacture, or had been worked with a particular kind of coal in its manufacture. Appellee seems to have acted fairly and honestly, and omitted no duty in the transaction.

The facts all fully considered, we are of opinion appellee was guilty of no fraud, and the finding of the jury was right, and the judgment of the court below must be affirmed.

*Judgment affirmed.*