JONES, RESPONDENT, *v.* ARMSTRONG, APPELLANT.

(No. 3,448.)

(Submitted January 6, 1915.    Decided January 16, 1915.)

[145 Pac. 949.]

*Sales—Warranty—Express and Implied—Burden of Proof— Rescission.*

Sales—Rescission—Pleading and Proof—Insufficiency.
1. Where, in action on a note given in payment of a plow, defendant did not plead a rescission and his evidence did not show any demand for the note, and made it clear that his alleged offer to return the implement amounted to no more than a notification that it was at a certain place at plaintiff's disposal, the claim that his defense was based upon his right to rescind had no merit.

Same—Express Warranty—What Does not Constitute.
>    2.    The statement by the seller of a plow that it had done good work for him at sod-breaking was not, in the absence of reliance thereon by the buyer, an express warranty.
>
>    [As to what constitutes warranty, see note in 94 Am. St. Rep. 209.]

Same—Second-hand Articles—Implied Warranty.
>    3.    One knowingly buying a second-hand article from a person not a dealer or manufacturer, relying upon his own judgment, takes it unaccompanied by an implied warranty as to its fitness for a special purpose.
>
>    [As to circumstance that vendor assumes to assert fact buyer is ignorant of as test of warranty, see note in Ann. Cas. 1913C, 711.]

Same—Warranty—Burden of Proof.
>    4.    Where breach of warranty of a piece of machinery for a certain purpose is relied upon, in an action to recover its purchase price, the burden of showing unfitness resting upon defendant is not sustained by evidence that upon a test it did poor work, unless it is also shown that the adjustment and operation were correct at the time of the test.

*Appeal from District Court, Teton County; H. H. Ewing, Judge.*

ACTION by Evan D. Jones against Bart Armstrong. From a judgment for plaintiff and an order denying defendant a new trial, the latter appeals. Affirmed.

Cause submitted on briefs of counsel.

*Mr. David J. Ryan,* for Appellant.

The purchaser may rescind a contract of sale and return the article when there is a breach of an express warranty, although there was no agreement to that effect and no fraud. (*Bryant v. Isburgh,* 13 Gray (Mass.), 607, 74 Am. Dec. 655, and note.) The purchaser's knowledge of the existence of a defect does not exempt the seller from liability upon his express warranty of the chattel. (*Stucky v. Clyburn,* Cheves L. (S. C.) 186, 34 Am. Dec. 590.) There is no defense against a warranty that the buyer might have discovered the defect by an examination of the article. (*Meickley v. Parsons,* 66 Iowa, 63, 55 Am. Rep. 261, and note, 23 N. W. 265.) An inspection by the buyer before acceptance will not deprive him of the protection of a warranty as to latent defects. (*Miller & Co. v. Moore etc. Co.,* 83 Ga. 684, 20 Am. St. Rep. 329, 6 L. R. A. 374, 10 S. E. 360.) A

vendor will be held liable for patent defects in an article sold if he so stipulates in a warranty. (*Watson* v. *Boode,* 30 Neb. 264, 46 N. W. 491.) A breach of warranty is a defense to a note given for the purchase money of property sold under a warranty, even though the note was executed subsequent to the time the contract of warranty was made. (*Gale-Sulky Harrow Mfg. Co.* v. *Stark,* 45 Kan. 606, 23 Am. St. Rep. 739, 26 Pac. 8; *Falconer* v. *Smith,* 18 Pa. 130, 55 Am. Dec. 611; *Toledo Sav. Bank* v. *Rathmann,* 78 Iowa, 288, 43 N. W. 193.) If a defect is latent, and is known and concealed by the seller, the rule of *caveat emptor* does not apply. (*Gold Ridge Min. Co.* v. *Tallmadge,* 44 Or. 34, 102 Am. St. Rep. 602, 74 Pac. 325; *Downing* v. *Dearborn,* 77 Me. 457, 1 Atl. 407.) There are strong intimations in some of the decided cases that the selling of an article for a sound price raises a warranty in law. (*Bailey* v. *Nickols,* 2 Root (Conn.), 407, 1 Am. Dec. 83; *Bowser & Co.* v. *Bathurst,* 91 Kan. 611, 138 Pac. 585; *Hodge* v. *Tufts,* 115 Ala. 366, 22 South. 422.)

Where one contracts to supply an article in which he deals, to be applied to a particular purpose, of which he is informed, under such circumstances that the buyer necessarily trusts to the judgment of the seller, there is a warranty implied that the article shall be reasonably fit for the purpose for which it is to be applied. (*Goldridge Min. Co.* v. *Tallmadge,* 44 Or. 34, 102 Am. St. Rep. 602, 74 Pac. 325; *McCaa* v. *Elam Drug Co.,* 114 Ala. 74, 62 Am. St. Rep. 88, 21 South. 479.) Where machinery is ordered from a dealer or manufacturer for special use, communicated to him at the time, the law implies a warranty that it is reasonably suitable and fit for the purpose for which it is sold and will perform the work for which it is designed. (*Kennebrew* v. *Southern etc. Machine Co.,* 106 Ala. 377, 17 South. 545.) An engine is ordinarily warranted by implication to answer the purpose for which it is sold. (*Lanz* v. *Wachs,* 50 Ill. App. 262.) The sale of personal property with a warranty of its fitness for a prescribed use may be treated as a sale upon conditions subsequent to the allegation of the purchaser, and in

the event of breach of warranty, the property may be restored and the sale rescinded. (*Mundt* v. *Simpkins,* 81 Neb. 1, 129 Am. St. Rep. 670, 115 N. W. 325; *American White Bronze Co.* v. *Gillette,* 88 Mich. 231, 26 Am. St. Rep. 286, 50 N. W. 136.)

*Mr. R. Ferguson,* for Respondent.

When an express warranty is set up, the pleader is precluded from relying on an implied warranty arising out of the same contract, even when the first relates to one quality and the other is sought to be implied with respect to an entirely different quality. (30 Am. & Eng. Ency. Law, 135, 136; *First Nat. Bank* v. *Hughes,* 5 Cal. Unrep. 454, 46 Pac. 272; *Cosgrove* v. *Bennett,* 32 Minn. 371, 20 N. W. 359; *Walter A. Wood Harvester Co.* v. *Ramberg,* 60 Minn. 219, 61 N. W. 1132.) In the sale of a second-hand chattel there is ordinarily no implied warranty of quality or that it is fit for the purpose for which it was made. (15 Am. & Eng. Ency. Law, 1240; *Ramming* v. *Caldwell,* 43 Ill. App. 175; *Holden* v. *Clancy,* 58 Barb. (N. Y.) 590; *Cogel* v. *Kniseley,* 89 Ill. 598.) The rule of *caveat emptor* applies where it is sought to enforce an implied warranty of quality or soundness of the article sold, when the buyer had an opportunity to inspect. (*Springfield Shingle Co.* v. *Edgecomb Mill Co.,* 52 Wash. 620, 35 L. R. A. (n. s.) 258, 101 Pac. 233; *Kullman, Salz & Co.* v. *Sugar Mfg. Co.,* 153 Cal. 725, 96 Pac. 369; *Browning* v. *McNear,* 145 Cal. 272, 78 Pac. 722.)

MR. JUSTICE SANNER delivered the opinion of the court.

Action by Evan D. Jones against Bart Armstrong, upon a promissory note given by the latter to the former for the sum of $800, with interest at eight per cent per annum. The answer consists of denials and "a further and separate defense" wherein it is alleged that said note was given in payment of an Emerson plow purchased of Jones by Armstrong for sod-breaking; that Jones, who knew of the purpose for which the plow was desired, warranted and represented the same to be capable of first-class work in that respect; that these representa-

tions were untrue, and were known to Jones to be untrue; that Armstrong did not know, and could not ascertain, without a trial of the plow, that these representations were not true, and he relied upon them; that he took possession of the plow and gave it an immediate and fair test, as a result of which it was ascertained that the same was wholly unfit, and could not be used for breaking or any other purpose; that notice was forthwith given to Jones by Armstrong, who tendered back the plow and demanded the return of said note; that, in consequence of the failure of the plow to meet the representations made by Jones, Armstrong became unable to perform certain contracts which he had entered into, and lost the profits which would have accrued therefrom, and also sustained special damage in certain other respects, all in the sum of $1,100, for which judgment is prayed. All these affirmative allegations are traversed by a general denial in the reply.

Upon the trial, which was to the court sitting with a jury, the plaintiff contented himself with the introduction of the note and testimony to the fact that it was due and wholly unpaid. On cross-examination it was elicited by defendant's counsel that the note was given in payment for the plow which he (Jones) had previously bought and used, and which had done satisfactory work for him.

The evidence on the part of the defendant was given by Armstrong himself and by the witnesses Hughes, Cawood and Price. Armstrong testified: "I went to see Mr. Price, and asked him if he had what is known as the Emerson plow, sod-bottom plow, and disc plow. He said he didn't have one. He was the agent for this plow at Conrad at this time, and I asked him if he knew of one, if I could locate one. He said he thought Evan Jones over east of town had a plow that he wanted to sell. So Mr. Price drove me out there in his automobile, and we saw Mr. Jones and saw the plow. The plow at this time had the discs. It was not rigged for sod-bottom plowing. It was a three-section Emerson plow, susceptible of sod-bottom, as all are supposed to be. Mr. Jones made a price on this plow of $300. Mr.

Price and I went back, and I talked to Mr. Price about this plow, and I asked him if this plow could be guaranteed to give satisfaction or to do good plowing. He said it could; that the Emerson was behind the plow as long as a man saw fit to operate it. * * * I met Mr. Jones two times. I am not sure which time it was that he spoke about the plow. He said the plow did good work for him; that was with the sod-bottoms on. I think he said he plowed sixty acres with sod-bottoms—probably not that much. I told him I wanted to use the plow for sod-bottom breaking. * * * When I got the plow it was hitched to the engine, and I took it out to the ranch. I used it two or three times; we tried it out on the prairie sod. * * * After the plow was used three times, I guess there were some ten or twelve acres we had gone over and tried to plow. It was not a good piece of plowing. I don't know that I knew what was the trouble with it. * * * One of the front sections cut too deep; the rear section would not run deep enough; and each section in the middle or center is worked by one lever. If the front section run too deep, you raised the lever, and that throws the plows of the rear section out of the ground. There was no adjustment as to the depth of the plows, other than the four levers. These four levers covered the plow or the depth of all the plows that was strung on the two sections from this frame. I had the same man on the engine that plowed for Mr. Jones, and I was looking after the plows myself also. * * * The fault was not in the plow; the fault was in the place that it seemed to swing on—in the frame of the plow. * * * The plow would not plow uniformly. It had that fault of running too deep and running too shallow, and also had the fault of piling the sod up instead of folding it over. * * * After using the plow for three times, I wrote Mr. Jones that the plow was there at his disposal. I could not use the plow. I told him it would not do the work and did not answer the purpose for which I purchased it. * * * " Upon cross-examination Mr. Armstrong further testified: That he had operated an Emerson plow before this in the disc frame, but not in the sod-bottom frame.

"To say that I know why the plow did not work properly would involve a good deal. The construction frame that carries these plows was not so mechanically built as to carry the plows evenly and regulate them in the ground. * * * There would be two cables to adjust, and you must have these cables so they would carry the beams squarely in front of the plow, or carry the beam in right angles behind the engine or parallel with the rear of your engine. * * * When I first went to see Mr. Jones about buying the plow it was the time I talked to Mr. Price; I went out once, and I might have gone twice. * * * I asked him to reduce the price, but he said I could take it for $800 or leave it." On redirect examination he said with reference to Jones' statement that the plow had done good work for him: "I took the statement for what it was worth. I relied upon Mr. Price as agent for the Emerson plow people. * * * I relied upon both Mr. Price's statement and Mr. Jones' statements in purchasing the plow."

David Hughes testified: "I was plowing for Mr. Jones with an Emerson plow, sod-bottom breaking part of the time. * * * I don't think the mold-board was not good plowing. This plowing was good. * * * The work did not suit Mr. Jones. * * * It was the bottoms—the mold-boards. * * * I had no experience before that in handling Emerson plows. I adjusted the cables on the plows. I don't know the regulation length of the cable for No. 1 beam or No. 2; we adjusted them and changed them so as to try to make the plows work."

Cawood testified that he "saw some ground that had been plowed by this Emerson plow. * * * The plowing * * * was poor. * * * I do not know what was wrong with the plow. * * * I do not know whether it was the fault of the plow or the fault of the man that operated it that accounted for the bad plowing."

Price testified that the plow was second-hand when sold to Mr. Jones and third-hand when sold to Mr. Armstrong.

At the conclusion of the testimony the plaintiff moved the court to direct the jury to return a verdict in favor of the plain-

tiff, which was done, and, upon the verdict so returned, judgment was entered. Thereafter motion for new trial was made and overruled. The defendant has appealed from this judgment and order.

The only question presented is whether the evidence on the part of the defendant tended to establish any defense under the allegations of the answer. He contends that it did, upon what theory we are unable to precisely determine. The first part of his argument is devoted to a discussion of the right of rescission [1] for fraud and for failure of consideration. Neither the answer nor the evidence affords any warrant for the application of rescission. While the answer alleges an offer to return the plow and a demand for a return of the note, it presents no other allegations pertinent to rescission, but contains many that indicate a contrary position, *viz.*, reliance upon a breach of warranty as a defense and as the basis for an award in damages. Upon the evidence, the case is still worse, so far as rescission is concerned. Demand for the note is not mentioned, and the offer to return dwindles to a mere notification—insufficient as a return or offer to return—"that the plow was there at his disposal." (*Berlin Machine Works* v. *Midland C. & L. Co.*, 45 Mont. 390, 123 Pac. 396.)

The defendant also insists that he made a sufficient showing to go to the jury upon the theory of a breach of warranty; such warranty being both express and implied. Plaintiff argues that one cannot defend upon an express and implied warranty touching the same quality. This we need not consider, for reasons presently to appear. To begin with, no express warranty on the [2] part of plaintiff was shown, in our opinion. So far as the plaintiff himself is concerned, this express warranty is supposed to exist by virtue of his statement that the plow had done good work for him at sod-breaking. This was not a warranty. (30 Am. & Eng. Ency. Law, 142; *Worth* v. *McConnell*, 42 Mich. 473, 4 N. W. 198.) It was a representation which, to become a warranty, had to be relied on as such. (30 Am. & Eng. Ency. Law, 143.) That it was not relied on is clear from defendant's testi-

mony that he "took it for what it was worth"; that he "relied on Mr. Price as agent for the Emerson plow people"; that he "relied on both Mr. Price's statement and Mr. Jones' statements in purchasing the plow." In avoidance of this the defendant, in a vague and indefinite sort of a way, seems to contend that Price was an agent of plaintiff, and that his declarations, together with those of Jones, are sufficient to establish the warranty. We think it clear that Price was not the agent of anybody in this transaction; his function being merely that of an obliging merchant whose assistance had been solicited by the defendant himself.

As to the implied warranty, the defendant's situation is no **[3]** better. He did not go to Jones as the dealer or manufacturer of an article with which he was unacquainted. He had had some experience with the Emerson plow; that was the plow he started out to buy. He applied to plaintiff because that was the sort of plow the plaintiff had to sell. Defendant knew that plaintiff was not a dealer or manufacturer, and that the plow was a second-hand one. From these circumstances no implied warranty by the plaintiff can arise touching the original fitness of the plow for sod-breaking. (35 Cyc. 408; 15 Am. & Eng. Ency. Law, 1240; *Ramming* v. *Caldwell*, 43 Ill. App. 175; *Cogel* v. *Kniseley*, 89 Ill. 598; *Joy* v. *National Exch. Bank*, 32 Tex. Civ. App. 398, 74 S. W. 325.) Our statute (Rev. Codes, sec. 5104) provides: "Except as prescribed by this article, a mere contract of sale or agreement to sell does not imply a warranty." And the only exceptions, so far as warranty of quality of examinable merchandise is concerned, are when the buyer relies upon the seller's judgment, the latter knowing that fact, and where the sale is made by the manufacturer or dealer. That neither exception can be applied here is obvious.

Assuming, however, that there was a warranty of the plow as fit for sod-breaking, the evidence, we think, falls short of **[4]** establishing its breach. To show that upon a test it did poor work is not to show its incapacity to do good work. Clearly deducible from the evidence is the fact that adjustment and oper-

ation had much to do with the results achieved, and the defendant failed to show that the adjustment and operation were correct upon the test. The burden of showing unfitness was upon the defendant, and Cawood's remarks, "I don't know whether it was the fault of the plow or the fault of the man that operated it," must have expressed the view of the trial court upon the whole evidence, as it certainly expresses ours.

We think the order directing a verdict for the plaintiff was justified. That being so, the judgment and order appealed from were correct and must be affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.

