No. 81-303

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

JAMES A. WOODAHL and BARBARA A.
WOODAHL, husband and wife,

Plaintiffs and Appellants,

vs.

CAROLYN K. MATTHEWS,

Defendant and Respondent.

---

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade
Honorable John McCarvel, Judge presiding.

Counsel of Record:

For Appellants:

Smith, Baillie & Walsh, Great Falls, Montana

For Respondent:

Scott, Linnell & Newhall, Great Falls, Montana

---

Submitted on briefs: November 5, 1981

Decided: February 3, 1982

Filed: **FEB 3 - 1982**

_Thomas J. Kearney_
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Plaintiffs, James and Barbara Woodahl appeal a final judgment entered by the District Court of the Eighth Judicial District denying their claim for rescission and ordering the specific performance of a contract between plaintiffs and defendant, Carolyn K. Matthews.

James Woodahl, an active real estate developer working primarily in Great Falls and Billings, developed the Park Plaza residential condominiums in Great Falls. Barbara Woodahl is James' wife.

Carolyn Matthews was the owner of a house at 1909 Eleventh Street Southwest, Great Falls, Montana. She had been a real estate sales person for approximately six months when she was approached by an agent of the Woodahls regarding the opportunity to purchase a Park Plaza Condominium.

Negotiations commenced between the two parties in late 1979. The negotiations resulted in a series of agreements being entered into on January 8, 1980, whereby the Woodahls would lease units 7A and 4C of Park Plaza to Matthews in exchange for Matthews selling the Woodahls her home. The lease for 7A contained an option to purchase the unit on February 1, 1981. The option was to be exercised by Matthews' forgiving the obligation of the Woodahls under their promissory note on the house.

On February 13, 1980, the Woodahls, their interior decorator, Tom Matsko, and Richard Newman, a building contractor, entered the house to gather information for remodeling purposes. While in the upstairs master bedroom, Mr. Woodahl noted that the floor appeared to be out of level. Using his

level, Mr. Newman determined that the floor sloped toward the north at a rate of 5 1/2 inches over thirty feet. Other rooms also were determined to be out of level, most notably the downstairs television room.

Out of court attempts to cure the problem to the satisfaction of both parties failed. On May 5, 1980, plaintiffs filed a complaint in the Eighth Judicial District alleging fraud; or, in the alternative, mistake on the part of defendant. They requested rescission of the contract; or, in the alternative, damages to be measured by the cost of restoring the house to a structurally sound and habitable state. Defendant filed an answer and counter-claim on May 20, 1980, requesting specific performance of the agreements.

At trial, Carol Matthews testified that she and her family had resided in the house for ten years and that she had never noticed the floors were not level. She had noticed that two doors, the master bedroom door and the door to another upstairs bedroom, tended to automatically slam shut. She propped these doors open with a valet in the master bedroom and a toy in the other bedroom. These objects were in place each time the Woodahls toured the house. The automatic closing problem was attributed by Mrs. Matthews to either loose hinges or incorrect hanging of the doors. She testified that the problem had arisen after her husband oiled the hinges on the doors.

The Matthews completed several remodeling projects and built two additions to the home during their residence. In 1975 the garage beneath the master bedroom was converted to a den and a new garage constructed adjacent to the den. In 1976 the kitchen was remodeled and a dinette constructed. Russ Jones was the construction superintendent for both

projects. He testified at trial that he had not noticed any unlevel condition so out of the ordinary as to warrant being brought to the attention of Mrs. Matthews.

Further testimony by Mr. Jones concluded that had the house settled 5 1/2 inches, cracks in the foundation of the house and breakage of pipes would have occurred. Mr. Jones noticed no cracks or breaks at the time the construction projects were performed.

Mr. James Walsh, a salesman for contract flooring, performed an estimate for floor covering for the master bedroom of the house. He noticed no unlevel condition while performing his estimate and he was never informed by the carpet layer of any problem.

Mr. James Greer, a carpenter, resided the house. He noticed nothing unusual. Mr. Vern Flesch, a painter and paperhanging contractor, applied striped wallpaper to the walls and ceiling of the upstairs bathroom. He noticed no particular unlevel condition within the bathroom which he considered exceptional.

James Woodahl testified at trial that he had toured the house two times prior to the January 8, 1980, agreements. Mrs. Woodahl testified that she had accompanied her husband on those tours. Neither plaintiff noticed the floors to be out of level during the tours. The floor's unlevel condition was first noticed by James Woodahl on February 13, 1980.

James Woodahl hired William Ferro to professionally appraise the house prior to the signing of the contract agreements. Mr. Ferro did not observe the unlevel condition when he appraised the home, nor did he discover any evidence of settlement. He appraised the home at $190,000. He estimated that the unlevel condition would reduce the value of the home by ten to fifteen percent.

In its findings of fact, the District Court found that Mrs. "Matthews was not aware of an unlevel condition in portions of the home when it was sold to the Woodahls." The court also found "that the unlevel condition in portions of the home was not observable by persons engaged in normal usage of the home, did not affect the habitability of the home and did not prevent the Woodahls from using the home for the purpose which they originally intended." Matthews was not found to be guilty of fraud or misrepresentation; mutual mistake between the two parties was not found to exist; and no material failure of consideration warranting a rescission of the agreement was found.

Therefore, the court concluded, since the home was habitable despite the unlevel conditions, "Woodahls received the property for which they bargained." Finally, the court held Matthews not liable for damages as a result of the unlevel condition of the home and found Matthews entitled to specific performance of the agreements.

On appealing the order for specific performance, Woodahls raised the following issues:

(1) Whether the District Court abused its discretion in refusing to grant relief on the theory of express warranty.

(2) Whether the District Court abused its discretion by failing to find that the defendant had knowledge of the defective condition of the home when she sold it to the plaintiffs.

(3) Whether the District Court abused its discretion by failing to grant rescission of the contracts involved.

(4) Whether the District Court abused its discretion in refusing to grant relief on the basis of constructive fraud or unjust enrichment.

(5) Whether, having failed to grant rescission, the District Court abused its discretion by failing to award damages to the plaintiffs.

We will discuss the issue of warranty, consolidate our discussion of the issues bearing on rescission and, because we affirm, the damage issue is moot.

WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN REFUSING TO GRANT RELIEF ON THE THEORY OF EXPRESS WARRANTY.

Not only did the District Court refuse to grant relief on the theory of express warranty, it totally failed to address the issue in its findings of fact and conclusions of law. Upon reviewing the testimony concerning express warranties and applying relevant contract law to the facts as we found them, we agree that relief should not have been granted appellant on the theory of express warranty.

In the listing for the house, Mrs. Matthews described the condition of her home as excellent. However, nowhere in their testimony is there an indication that either Mr. or Mrs. Woodahl relied on that listing statement when deciding whether or not to purchase the house. There can be no express warranty without reliance. Jones v. Armstrong (1915), 50 Mont. 168 at 175, 145 P. 949 at 951.

Mr. and Mrs. Woodahl did state that on their second tour of the house, they asked Mrs. Matthews: "Are there any problems with this house?" Mrs. Matthews allegedly replied: "None whatsoever." Mr. Woodahl stated that he relied on this comment when deciding whether to purchase the house. Mrs. Matthews denied that conversation ever occurred. The trial court failed to make a finding of fact regarding the occurrence of this purported conversation.

However, even if the court had found that the conversation did take place and that Mr. Woodahl did rely on Mrs. Matthews' response, relief should not have been granted on

-6-

the theory of express warranty. A Real Property Purchase
Agreement was signed by the parties on January 8, 1980,
which contained the following clauses:

> "8. Conveyance of the real property and im-
> provements to Purchaser shall be by general
> warranty deed. Acceptance of the deed by
> Purchaser shall be deemed to be, and consti-
> tute, full performance and discharge of every
> agreement and obligation set forth herein and
> no covenant of this agreement shall survive
> the closing except as specifically set forth
> herein."

and

> "12. This Agreement constitutes the sole and
> entire agreement between the parties and super-
> sedes any and all prior written or oral repre-
> sentations, promises, covenants, understand-
> ings, or other agreements between the parties."

Written contracts supersede all oral negotiations which
preceded the signing of the contract. Section 28-2-904,
MCA, states:

> "Effect of written contract on oral agreements.
> The execution of a contract in writing, whether
> the law requires it to be written or not, super-
> sedes all the oral negotiations or stipulations
> concerning its matter which preceded or accom-
> panied the execution of the instrument."

Pursuant to this section, Woodahls' execution of the
Real Property Purchase Agreement served to waive all other
oral representations made by Matthews to the Woodahls. This
would have included the comment "none whatsoever," had that
comment been made by Matthews and relied upon by Woodahls.

WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION BY FAILING
TO GRANT RESCISSION OF THE CONTRACTS INVOLVED.

Section 28-2-1711, MCA, governs when a party may rescind
a contract. Section 28-2-1711(1), MCA, allows rescission
when "the consent of the party rescinding . . . was given
by mistake or obtained through duress, menace, fraud, or
undue influence . . ." Appellants in this case allege both
mistake and fraud, specifically constructive fraud.

Constructive fraud is defined in section 28-2-406, MCA, the relevant portion of which states:

"Constructive fraud consists in:

"(1) any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him."

This Court in Mends v. Dykstra (1981), ____ Mont. ____, ____ P.2d ____, 38 St.Rep. 2010, extended the concept of constructive fraud to transactions such as a contract for the purchase of a house. Therefore, constructive fraud may be raised as an issue in this case; however, pursuant to the express terms of section 28-2-406(1), MCA, constructive fraud requires the breach of a duty. Therefore, a factual determination regarding the existence of a duty must be made prior to any finding of constructive fraud.

The District Court determined that "Matthews was not aware of an unlevel condition in portions of the home when it was sold to the Woodahls . . ." Testimony by Mrs. Matthews and several contractors who performed work on the house substantiate this finding. In addition, appellants failed to notice the condition on two occasions and their professional appraiser testified to being unaware of the condition at the time he conducted the appraisal.

The findings of fact and conclusions of law of the District Court "will not be disturbed if supported by substantial evidence and by the law." Lauterjung v. Johnson (1977), 175 Mont. 74 at 77, 572 P.2d 511 at 512-513. We find there to be substantial credible evidence to support this finding of

-8-

fact and therefore uphold the District Court's determination that Mrs. Matthews was unaware of the defective condition at the time she sold the house to the Woodahls.

Since Mrs. Matthews was unaware of the defect, she was under no duty to disclose the defect to the Woodahls. This Court in Moschelle v. Hulse (1980), ____ Mont. ____, 622 P.2d 155, 37 St. Rep. 1506, made it clear that knowledge of a defect is necessary before the duty to disclose the defect exists. Therefore, pursuant to section 28-2-406, MCA, Mrs. Matthews is not guilty of constructive fraud as she had no duty to breach. We affirm the District Court's conclusion that Mrs. Matthews was not guilty of constructive fraud.

The District Court also determined that the Woodahls received that for which they had bargained. The trial court found:

> "Woodahls received the property for which they bargained. No condition of the home renders it uninhabitable or unfit for the purposes which they intended. Insofar as the purpose of the agreements was to furnish the Woodahls with a home to live in, that purpose was not frustrated by the unlevel condition of a portion of the home."

This determination by the trial court is not contested on appeal by appellants. There is substantial credible evidence to support this conclusion as the Matthews resided in the home for ten years. Thus, the conclusion is accepted as stated.

In order for a mutual mistake by the parties to a contract to warrant rescission of the contract, the mistake must be "so substantial and fundamental as to defeat the object of the parties in making the contract." Johnson v. Meiers (1946), 118 Mont. 258, 164 P.2d 1012. The trial court found no mutual mistake existed. However, even if a

-9-

mutual mistake had been found, the mistake did not affect "the object of the parties in making the contract" and rescission on the basis of mutual mistake does not lie.

Finally, as the court held that appellants' received the property for which they had bargained, there is no material failure of consideration. We affirm the District Court's decision not to rescind.

WHETHER, HAVING FAILED TO GRANT RESCISSION, THE DISTRICT COURT ABUSED ITS DISCRETION BY FAILING TO AWARD DAMAGES TO THE PLAINTIFFS?

We have previously upheld the District Court's determination that there was no basis for rescission. The same trial court's findings foreclose any claim upon which damages could be awarded.

The trial court made an award of attorney fees to respondent. The appellant did not assign that award as error and did not mention the issue in its brief. The matter is first discussed in the reply brief which is limited to responding to arguments made in the answer brief. Therefore, we will not consider the issue on appeal.

The judgment of the trial court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-10-