No. 87-347

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

VERDA WYMAN

        Plaintiff, Respondent,
        Cross-Appellant,

DuBRAY LAND REALTY, SHARON L. DuBRAY,
JAMES G. DuBRAY, and ROGER REEH; FLOBERG
REALTORS, a corporation; and WILLIAM R.
BENNETT,

        Defendants, Appellants,
        Cross-Respondents.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone,
                The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

        For Appellants, Defendants
        Cross-Respondents:

            Mark S. Werner, McNamer and Thompson, P.C., Billings, MT
            James P. Healow, Sweeney and Healow, Billings, MT

        For Respondent, Plaintiff,
        Cross-Appellant:

            Thomas D. Gai, Berger, Nelson and Gai, P.C., Billings, MT

---

                Submitted: February 3, 1988

                  Decided: March 29, 1988

Filed: MAR 29 1988

*Ethel M. Harrison*

---
Clerk

Mr. Chief Justice J.A. Turnage delivered the Opinion of the Court.

Mrs. Wyman brought this action in the Thirteenth Judicial District, Yellowstone County, after the DuBrays backed out of a buy-sell agreement to buy her real property. A jury found in favor of defendants. DuBrays appeal the denial of their attorney fees, and Mrs. Wyman appeals on two of the jury's findings. We affirm.

The issues are presented as follows:

1. Did the court err in denying DuBrays' attorney fees?

2. Does substantial evidence exist to support the jury's finding that the DuBrays did not breach the contract with Mrs. Wyman?

3. Does substantial evidence exist to support the jury's finding that the listing agent and Floberg Realtors were not negligent?

In spring 1984, Mrs. Wyman listed her home for sale with Ben Vaughn, a real estate broker in Billings. Mr. Vaughn advertised the home in a booklet with the Multiple Listing Service (MLS). When that listing expired, Mrs. Wyman listed the home with Mr. Bennett, of Floberg Realtors. When she initiated this listing, Mrs. Wyman wanted Mr. Bennett to develop a sales brochure for her home. He testified that because he was "pre-occupied" with producing the brochure, he copied the lot size, legal description, and other pertinent information concerning the home from Mr. Vaughn's previous advertisement with MLS. He then gave this information to MLS for republication in its current booklet. He also testified that his standard procedure was to go to the courthouse to get this information, but that he never did this for the Wyman property.

2

The DuBrays eventually became interested in the Wyman home and viewed the property a number of times. Mr. and Mrs. DuBray testified that they each checked the lot dimensions on a plat from the courthouse because they were interested specifically in what the dimensions were. Mrs. DuBray was a licensed real estate agent at the time, and this fact was disclosed to Mrs. Wyman. Finally, in June 1985 the DuBrays and Mrs. Wyman executed an "earnest money receipt and agreement to sell and purchase" (buy-sell agreement) with $5,000 earnest money deposited. The agreement contained the legal description reflected in the MLS booklet.

Sometime after this, Mr. Bennett learned from the title insurance company that the legal description in the buy-sell was different from the correct one contained on the last deed of record in the Clerk and Recorder's office. The incorrect description was Lot 11, Block 2, Poly Addition. The correct one was East 128.56 feet of Lot 11, Poly Addition, Second Filing. The difference was a seven foot strip along the west boundary. When this discrepancy came to Mr. Bennett's attention, the correct legal description was penned into the buy-sell, and Mrs. Wyman initialed the change. The DuBrays, however, would not initial the change. They consulted their attorney, who indicated that the change in legal description was material. The DuBrays therefore terminated the buy-sell and requested a return of their earnest money, although they testified that they still wanted to negotiate a purchase of Mrs. Wyman's home. Mrs. Wyman filed this action soon after the DuBrays terminated the contract. She alleges that she suffered approximately $70,700 in damages due to Mr. Bennett's negligence and the resultant contract breach by DuBrays. By special verdict, the jury found that DuBrays did

3

not breach the contract, that DuBrays were not negligent, and that Mr. Bennett and Floberg were not negligent.

After trial, the DuBrays filed a bill of costs and a claim for attorney fees. Mrs. Wyman filed a motion for judgment notwithstanding the verdict as against Bennett and Floberg. The court awarded costs to all defendants but denied DuBrays' claim for attorney fees. DuBrays appeal this decision. The court also denied Mrs. Wyman's motion for judgment notwithstanding the verdict, and entered judgment in accord with the special verdict. Mrs. Wyman appeals this judgment, by cross-appeal.

I

Did the court err in denying DuBrays' attorney fees?

In Sliters v. Lee (1982), 197 Mont. 182, 184, 641 P.2d 475, 476, we stated the general rule that in the absence of a statutory or contractual provision, attorney fees are not recoverable. The DuBrays argue that Mrs. Wyman would have been entitled to attorney fees under a specific clause in the contract had she proved at trial that DuBrays were in default. They argue, therefore, that the right to attorney fees is reciprocal pursuant to § 28-3-704, MCA, and that they should recover attorney fees after successfully defending the suit. Section 28-3-704, MCA, provides in pertinent part:

> Whenever, by virtue of the provisions of any contract . . . one party . . . has an express right to recover attorney fees from any other party to the contract . . . in the event the party having that right shall bring an action upon the contract . . . all parties to the contract . . . shall be deemed to have the same right to recover attorney fees and the prevailing party in any such action, whether by virtue of the express contractual right or by virtue of this section, shall be entitled to recover his reasonable attorney fees from the losing party. . . .

4

In Town Pump, Inc. v. Diteman (Mont. 1981), 622 P.2d 212, 216-17, 38 St.Rep. 54, 59, we held that this statute grants reciprocal rights to one party only when the other party has an express right to fees under the contract. It follows then that the clause in the contract which provides attorney fees must be read carefully to determine the respective rights of the parties. The clause relied upon by DuBrays reads as follows:

> Time is of the essence of this agreement and of this clause. If any payment to be made hereunder or any other condition of this agreement is not timely made, then this contract, at the option of the party who is not in default, may be terminated and the non-defaulting party may recover damages and reasonable attorney's fees to be awarded by the court in any action for a specific performance or otherwise. (Emphasis added.)

This clause appears in a form agreement shown as approved by the Montana Association of Realtors. The clause is confusing and poorly drafted. The beginning of the second sentence seems to be defining what constitutes default for purposes of the remainder of the sentence. Neither party has contended that the other has failed to timely make a payment. That leaves us with the question whether "any other condition of this agreement is not timely made. . . ." We cannot determine the meaning of this part of the sentence without inserting words and deleting others. While it is true we must construe the language of the contract in order to support the intent of the parties, it also is true that when uncertainty exists we will construe the language of a contract against the party who drafted the contract, as the one who caused the uncertainty. St. Paul Fire & Marine Ins. Co. v. Cumiskey (1983), 204 Mont. 350, 363, 665 P.2d 223, 229. Mrs. DuBray signed the buy-sell agreement, exhibit 11, as Sharon L.

5

DuBray, sales representative for DuBray Land Realty, the selling real estate firm. Mrs. DuBray testified that she authored the buy-sell, exhibit 11, which Mrs. Wyman eventually signed. We observe the conflict of interest present here. Mrs. DuBray selected the form of the agreement, filled in the blank spaces, and presented the document as an offer, all the while acting in a dual capacity as selling agent and buyer. Shortly after the offer was accepted, Mrs. DuBray rescinded the contract, based upon an incorrect description which she had inserted in the agreement. Now, after successfully defending Mrs. Wyman's lawsuit, Mrs. DuBray would have this Court construe the language of the contract to Mrs. Wyman's detriment. We conclude that to do so under these facts would be inequitable. Given the facts of this case and the uncertain language of the contract, which we construe against the drafter, Mrs. DuBray, we affirm the holding of the District Court as to attorney fees.

## II

Does substantial evidence exist to support the jury's finding that the DuBrays did not breach the contract with Mrs. Wyman?

Section 28-2-1711, MCA, allows rescission if consent was given by mistake. Mrs. Wyman concedes that the incorrect legal description constituted mutual mistake. In Woodahl v. Matthews (1982), 196 Mont. 445, 452, 639 P.2d 1165, 1169, this Court held,

> In order for a mutual mistake by the parties to a contract to warrant rescission of the contract, the mistake must be 'so substantial and fundamental as to defeat the object of the parties in making the contract.' Johnson v. Meiers (1946), 118 Mont. 258, 164 P.2d 1012.

6

Mrs. Wyman's argument is that the mistake in this case is "paper only" and not substantial and fundamental to the DuBrays' object of buying a home for personal use. She claims the DuBrays were buying what they saw when they viewed the physical property. DuBrays counter by saying they relied upon certain plat descriptions of the property, not only their physical inspection. Mrs. Wyman believes that due to financial concerns, the DuBrays were relieved to have an excuse to back out of the transaction.

When, on appeal, a jury verdict is questioned we must determine whether substantial credible evidence exists to support that verdict. Clark v. Norris (Mont. 1987), 734 P.2d 182, 184, 44 St.Rep. 444, 445. As stated in Kleinsasser v. Superior Derrick Service, Inc. (Mont. 1985), 708 P.2d 568, 570, 42 St.Rep. 1662, 1664, "[i]t is not our function to agree or disagree with the jury verdict in reviewing, but rather to search for sufficient evidence on the record." We will view the evidence in the light most favorable to the party prevailing at trial and, "if the evidence conflicts, the credibility and weight given to the evidence is the province of the jury and not this Court." Clark, 734 P.2d at 185 (quoting Mountain West Farm Bureau Mutual Ins. v. Girton (Mont. 1985), 697 P.2d 1362, 1363, 42 St.Rep. 500, 501).

We will not retry the case simply because the jury believed the DuBrays' evidence over Mrs. Wyman's. We conclude that substantial credible evidence exists in the record to support the jury's determination.

Mrs. Wyman next urges that § 28-2-1715, MCA, must be considered. That statute provides as follows:

> Rescission cannot be adjudged for mere mistake
> unless the party against whom it is adjudged can be

7

> restored to substantially the same position as if the contract had not been made.

The jury was not instructed in terms of this statute and the issue was not presented to the District Court. Further, Mrs. Wyman does not contend that the jury was improperly instructed. We will not address on appeal an issue not presented to the district court. Carl Weissman & Sons, Inc. v. Paulson (Mont. 1987), 739 P.2d 494, 495, 44 St.Rep. 1232, 1234.

## III

Does substantial evidence exist to support the jury's finding that the listing agent and Floberg Realtors were not negligent?

Mrs. Wyman questions the sufficiency of the evidence supporting the jury's finding that Mr. Bennett and Floberg were not negligent. She cites trial testimony to the effect that a reasonably prudent listing agent or broker would go to the courthouse and personally check the legal description of property to be listed with the MLS. The defendants cite substantial testimony that Mr. Bennett's actions were reasonable under the circumstances. The jury is free to accept testimony of one side to the exclusion of the other and may reject testimony, even that of experts. Kleinsasser, 708 P.2d at 570. We hold that substantial credible evidence exists in the record to support the jury's finding that Mr. Bennett and Floberg were not negligent.

Mrs. Wyman strenuously argues that the jury's finding that Mr. Bennett's conduct was not negligent directly contradicts the finding that the DuBrays were justified in rescinding the buy-sell due to mutual mistake. We hold that these findings are not mutually exclusive. The issues involved separate inquires into the conduct of each of the defendants.

8

As a matter of law, mutual mistake does not have to be the result of the negligent act of a third person.

Affirmed.

_____
Chief Justice

We Concur:

_____

_____

_____
Justices

_____
District Judge Ted Mizner
sitting for Justice L.C.
Gulbrandson