No. 90-250

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

JAMES S. BUCK,

        Plaintiff and Appellant,

-vs-

BILLINGS MONTANA CHEVROLET, INC.,
a Delaware corp.; FRONTIER CHEVROLET CO.,
a Montana corp.; FS ENTERPRISES, INC., a
South Dakota Corp.; FRANK STINSON; and
DENNIS MENHOLT,

        Defendants and Respondents.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert Holmstrom, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Kenneth D. Tolliver (argued); Wright, Tolliver &
Guthals, Billings, Montana

    For Respondent:

        Sidney R. Thomas, Martha Sheehy (argued); Moulton,
Bellingham, Longo & Mather, Billings, Montana
Peter T. Stanley, Bill McNamer (argued); McNamer
& Thompson, Billings, Montana
Rockwood Brown (argued); Anderson, Brown, Gerbase,
Cebull, Fulton, Harman & Ross, Billings, Montana

Submitted: March 21, 1991

Decided: May 16, 1991

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Plaintiff, James S. Buck, appeals from an order granting summary judgment in favor of defendants Billings Montana Chevrolet, Frontier Chevrolet, F.S. Enterprises, Inc., Frank Stinson and Dennis Menholt. The District Court of the Thirteenth Judicial District, Yellowstone County, held that the reasons asserted by defendants for Buck's discharge constituted a legitimate business reason under the Wrongful Discharge from Employment Act, Sections 39-2-701 et seq., MCA. It therefore granted summary judgment and dismissed Buck's lawsuit. We affirm in part and reverse in part.

The issues presented for our review are:

1. Whether a new owner (controlling shareholder and new officers) of a business may properly terminate a long term employee who was general manager of the business before the control of the new business was sold to the new owner;

2. Whether the District Court properly granted summary judgment on the issue of fraud;

3. Whether an issue of fact exists as to the employee's discharge violating written personnel policies of Billings Montana Chevrolet;

4. Whether The District Court properly dismissed Frontier Chevrolet, F.S. Enterprises, Frank Stinson and Dennis Menholt from the lawsuit.

James Buck (Buck) was an employee, since 1973, of a corporation which was named Frontier Chevrolet Company (Frontier Chevrolet) and is now named Billings Montana Chevrolet, Inc., in

2

Billings, Montana. The controlling shareholder of Frontier Chevrolet was Andy Anderson, who was Buck's father-in-law and president of the company. By all accounts, Buck was a competent, faithful employee who had risen through the ranks to become general manager of the business. His expertise was recognized throughout the automobile industry. Mr. Buck was elected President of the Billings Automobile Dealers Association, the only non-dealer to ever hold the position and was preapproved by General Motors to be a dealer. Apparently, Mr. Buck had dreams of purchasing the dealership, but he did not have sufficient resources.

Frank Stinson is a controlling shareholder of FS Enterprises, Inc., which owns and controls a number of automobile dealerships. In 1986 he began looking for another automobile dealership on behalf of F.S. Enterprises, and, as a result became interested in purchasing the Frontier Chevrolet Company. Apparently, Mr. Stinson through F.S. Enterprises had a tradition of buying dealerships and having his long term loyal employees placed in a position of management at the newly purchased business. These employees would eventually purchase the dealership from F.S. Enterprises. This arrangement was a method utilized by Stinson, through his companies, to reward his faithful employees.

After several months of negotiations, a contract for the purchase of the stock of Frontier Chevrolet was agreed to. During these negotiations Andy Anderson died. However, Mr. Buck and his wife continued to negotiate the purchase. The final contract required the officers and directors of Frontier Chevrolet to

3

resign. The contract did not, however, require any employee to resign. Although Mr. Buck was the general manager of the dealership, he was not an officer or director.

Sale of the stock of Frontier Chevrolet was completed on August 7, 1987. Consistent with Frank Stinson's and F.S. Enterprise's policy of management, Frontier Chevrolet, acting through its new officers, filled the position of executive manager of the dealership with one of Stinson's long-term employees, Dennis Menholt. The next day, Mr. Buck showed up for work and was told that he was no longer general manager because Menholt would be running the business, and it would not work out with both of them there. After some negotiations, he was offered the position of Fleet and Lease Manager, which he refused.

Mr. Buck's employment with his father-in-law's company was without a contract or specified term.

I

Following F.S. Enterprises' purchase of the stock of Frontier Chevrolet, and the change of officers, Jim Buck was terminated. The defendants maintain that Buck was terminated in compliance with a long standing policy of F.S. Enterprises and Frank Stinson, which placed long term employees in charge of the new dealership. The defendants also maintain that this arrangement would save money, because the two positions formerly held by Buck and his father-in-law, were consolidated into one position held by Dennis Menholt. Buck has not brought forth any facts to contest these reasons. He does, however, maintain that the first reason, which was the

4

primary justification for his discharge, is not adequate under Montana's Wrongful Discharge from Employment Act. See §§ 39-2-701, MCA, et seq. According to pertinent parts of the Wrongful Discharge Act, a discharge is only wrongful if the discharge was not for good cause and the employee had completed the employer's probationary period of employment. See § 39-2-904(2), MCA.

Buck was not a probationary employee. Therefore, in order to establish a claim for wrongful discharge under § 39-2-904(2), MCA, he must prove that his termination was not for good cause. Good cause is defined as:

> . . . reasonable job related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation or other legitimate business reason. Section 39-2-903(5).

All parties agree that there was no failure on Buck's part to satisfactorily perform his job duties. Nor is there any allegation that he disrupted the employer's operation. Instead the defendants maintain that his dismissal was justified by "reasonable job related grounds . . . based upon [a] legitimate business reason." We must therefore determine whether under these uncontested facts F.S. Enterprise's policy (which became Frontier Chevrolet's policy) to replace Buck with its own man constituted a legitimate business reason under the Act.

A review of the legislative history of the Wrongful Discharge from Employment Act is of little assistance. Initially good cause was defined as a legitimate business reason. However, further changes eliminated this term and defined good cause as:

> reasonable job related grounds for dismissal based upon

5

a failure to satisfactorily perform job duties or disruption of employment operations.

This wording appears to have been set forth to include some specificity to misconduct charges for the protection of the employee. However, this limited language had a major omission because there was no allowance for discharge based upon legitimate economic reasons such as lack of work or elimination of the job. To remedy this situation, the term legitimate business reason was added to the definition. It was thought that this term was broad enough to cover all of the various kinds of termination of employment. The term would advance the employee's interest in job security by requiring the employer in fact have a legitimate reason for discharge. At the same time, the employer's interest in management discretion would be protected by allowing businesses to make employment decisions for business reasons.

Perhaps because this term was added in an effort to broaden the definition of good cause, the legislature has not provided any concrete guidance to aid the judiciary in interpreting its meaning. We have, therefore, thoroughly reviewed prior case law from this jurisdiction, our sister jurisdictions, arbitration cases from the National Labor Relations Board, and law from foreign jurisdictions in an effort to arrive at a precise meaning of the term "legitimate business reason." This review has been of little assistance. All attempts to more specifically define this term or like terms have resulted in definitions that are as general as the term itself. We are therefore forced to fill in the gap left by the legislature and to define and apply the term in an equitable fashion that most

6

nearly effectuates the intent of the legislature.

A legitimate business reason is a reason that is neither false, whimsical, arbitrary or capricious, and it must have some logical relationship to the needs of the business. In applying this definition, one must take into account the right of an employer to exercise discretion over who it will employ and keep in employment. Of equal importance to this right, however, is the legitimate interests of the employee to secure employment.

We apply this definition to the issue presented by this case. As stated earlier, Jim Buck was an exemplary employee who worked in his father-in-law's business for almost fifteen years. During that period of time he rose through the ranks to become general manager of the dealership. While holding this position, Buck was responsible for managing the business in his father-in-law's absence.

In 1987, the business was sold to F.S. Enterprises. Frank Stinson, controlling shareholder, had a long term policy which was executed by F.S. Enterprises, of buying dealerships and placing long term faithful employees in the position of manager. The employee would then be given the chance to buy the business. According to deposition testimony, Stinson preferred this arrangement because he found the dealerships were run most efficiently and competently when the manager had a vested financial interest. In accordance with this system, Dennis Menholt was placed in charge of Billings Montana Chevrolet.

In the past, we have noted that it is inappropriate for courts

7

to become involved in the day-to-day employment decisions of business. See e.g. Hobbs v. Pacific Hide and Fur (1989), 236 Mont. 503, 771 P.2d 125. In cases such as this one, it is particularly important that this philosophy is followed. F.S. Enterprises made a large investment when it purchased the dealership from Buck's father-in-law. Because he lived in Louisiana, Stinson, through F.S. Enterprises and ultimately through the Frontier Chevrolet Company, desired to place a long term employee, in whom he held great trust, to manage that investment. As a matter of his policy, and the corporate policy of the company he controlled, such an arrangement was preferred because it allowed the placement of a person who conceivably held the same business values and philosophies as himself, in charge of the newly acquired business. It also gave him an opportunity to reward long term employees.

It would be against common sense and rationality for this Court to hold that such reasons or grounds do not constitute a legitimate business reason and are not related to the job involved. The net result of such a holding would be to force a new owner of a business to retain someone who it did not know or perhaps even trust to manage a large dollar investment.

In this case, Buck has not argued these reasons for replacing him were false. Instead, he has steadfastly maintained that these motivations were not justified by the Wrongful Discharge from Employment Act. Because Buck has not come forward with any evidence showing bad faith or falsehood, we hold summary judgment was properly awarded.

8

We caution, however, that this holding is confined only to those employees who occupy sensitive managerial or confidential positions. An owner under these circumstances may not hold the right to terminate employees who hold duties which do not require the exercise of broad discretion. A company's interest in protecting its investment and in running its business as it sees fit is not as strong when applied to lower echelon employees, and may therefore be outweighed by their interest in continued, secure employment. See e.g. Pugh v. See's Candies Inc. (1981), 171 Cal.Rptr. 917, 928. Under the uncontested material facts of this case, the company's decision to replace Jim Buck with Dennis Menholt as executive manager of Frontier Chevrolet Company was for legitimate business reasons. The decision was not false, whimsical, arbitrary nor capricious and it had a logical relationship to the needs of the business.

## II

Buck maintains in a conclusory fashion that the defendants engaged in actual fraud at the time of his discharge by justifying it with false reasons. He argues that he was initially told he was terminated for economic reasons, because his former job of general manager was eliminated. He further argues that later another reason was given when the defendants stated Buck was discharged in order to make room for Dennis Menholt. He argues the original reasons were false and therefore constituted fraud. According to his argument, this "fraud" entitles him to recover punitive damages under § 39-2-905(2), MCA.

9

This section states:

> The employee may recover punitive damages otherwise allowed by law if it is established by clear and convincing evidence that the employer engaged in actual fraud or actual malice in the discharge of the employee in violation of 39-2-904(1).

Section 39-2-904(1) states:

> A discharge is wrongful only if . . . it was in violation for the employee's refusal to violate public policy or for reporting a violation of public policy.

Through a constrained interpretation of these provisions, Buck argues that they should be read together to allow him to proceed to the jury on the issue of punitive damages. Buck maintains that the alleged false reasons given for his discharge constituted a violation of public policy and are therefore actionable under § 39-2-905(2), MCA. We disagree.

Even if everything he says is true, this section does not provide Buck with a legitimate claim. The clear language of these provisions states that punitive damages are only allowed if an employer engages in actual fraud or actual malice in discharging an employee who reports or refuses to engage in violations of public policy. There is no evidence Buck reported or refused to violate public policy and he is therefore precluded from obtaining punitive damages under the Act. Summary judgment on this issue is affirmed.

III

Section 39-2-904(3), MCA, states that a discharge is wrongful if "the employer violated the express provisions of its own written personnel policy." Buck maintains that his employment was governed

10

by provisions of a written company employment manual which assured his continued employment if his job performance and economic circumstances remained satisfactory. Because neither of these conditions were present at the time of his discharge, Buck maintains the employment policies were violated and that he has a valid cause of action under § 39-2-904(3), MCA.

Defendants Billings Montana Chevrolet, Frank Stinson and Dennis Menholt, argue this issue was not presented at the District Court level and therefore should not be heard on appeal. Wyman v. DuBray Land Realty (1988), 231 Mont. 294, 752 P.2d 196. However, after reviewing the record, we note the issue was raised in prejudgment motions and orders. We therefore hold there is sufficient reference to this argument at the District Court level to allow this Court to review its merits.

The employee handbook contained numerous references to a policy on the part of the dealership to provide job security. In particular, one section stated:

> Our dealership is still growing. You are thus assured of steady employment as long as you are producing for us. We expect each of our employees to be maximum producers, always doing their part in accomplishing our business objectives.

Buck maintains that because there is no evidence he failed to produce for the dealership and because it was not in financial trouble, he was dismissed in violation of the terms of the employee handbook. We note, however, that Dennis Menholt offered Buck a position of fleet manager after the dealership changed hands.

Buck maintains that he did not accept this position because

he did not think it was a genuine offer and would actually result in a later dismissal. He felt Menholt offered him this position in an effort to appease him so that a lawsuit could be avoided. If these facts are true, it is possible Buck may have a cause of action under § 39-2-904(3), MCA.

The issue was not specifically addressed in the order granting summary judgment. However, because the case was completely dismissed, we reverse the grant of summary judgment as it applied to this issue and remand for further proceedings to determine the effect of language of the handbook and then whether the offer was made in good faith.

IV

In order to fully understand the final issue of this appeal, it is necessary to fully comprehend the relationships between the different defendants. The original corporation which was owned by Buck's father-in-law was named Frontier Chevrolet Company (Frontier-Delaware). It was a Delaware corporation and its stock was sold to F.S. Enterprises, which is controlled and operated by Frank Stinson, on August 7, 1987. On August 8, 1987, Frontier-Delaware terminated James Buck.

In December of 1987, Frontier-Delaware changed its name to Billings Montana Chevrolet, Inc., a Delaware corporation. Later in this same month, the duties and assets of Billings Montana Chevrolet were split between itself and a new corporation (Frontier-Montana). Frontier-Montana performed the operating functions of the dealership. Billings Montana Chevrolet, on the

other hand, retained the majority of all inventory, property and assets. It is also the principal shareholder of Frontier-Montana.

This corporate scheme developed so that Dennis Menholt could become an approved dealer under GM guidelines. Apparently, before one can become a dealer, one must retain a certain percentage of ownership in the dealership. By splitting the assets of Billings Montana Chevrolet, Dennis Menholt was able to afford the costs of purchasing the required interest in the operating dealership.

The District Court dismissed Frontier-Montana, Frank Stinson and Dennis Menholt from the lawsuit by order of summary judgment on February 6, 1990. F.S. Enterprises had previously been dismissed through stipulation of the parties. On March 1, 1990, Billings Montana Chevrolet (formerly Frontier-Delaware) was granted summary judgment on the grounds that Buck's dismissal was justified by a legitimate business reason. Buck has contested the dismissal of Frank Stinson, Dennis Menholt, Frontier-Montana and F.S. Enterprises, Inc. on appeal. In this portion of the opinion we address the propriety of the dismissal by the District Court of these four defendants.

Buck maintains that the District Court improperly dismissed Frontier-Montana. He argues that Frontier-Montana is a mere successor corporation to Billings Montana Chevrolet, and as such is liable for any obligations owed by Billings Montana Chevrolet, which arose before the split of assets. A successor corporation can be liable for the debts of its predecessor, if it is merely a continuation or reincarnation of the first corporation. 19

Am.Jur.2d Corporations § 2711. Generally, however, before a corporation can be deemed a successor, certain showings must be made. For example, it is generally required that the plaintiff establish that insufficient consideration ran from the new company to the old and that only one corporation existed at the completion of the transfer. 19 Am.Jur.2d Corporations § 2711.

The facts here do not support the conclusion that Frontier Montana is a successor corporation to Billings Montana Chevrolet. According to the record Billings Montana Chevrolet sold some assets to Frontier-Montana. However, Billings Montana Chevrolet has actively remained in business and holds equipment and real property received from the sale of Frontier-Delaware. There is no evidence that there was fraud in the sale of the corporate assets from Billings Montana Chevrolet to Frontier Montana or lack of consideration that would justify a finding that it was a successor corporation. The District Court properly dismissed Frontier Montana from the lawsuit.

Buck next argues that it was inconsistent for the lower court to dismiss Stinson and Menholt from the lawsuit and at the same time take their interests into consideration in determining that he was dismissed for a legitimate business reason. This argument suffers from several inherent weaknesses. First, a corporation, in and of itself, being an inanimate object, is incapable of formulating its own interests and policies. Rather its interests are formulated by the officers, directors and employees who carry out corporate business. With limited exceptions, these persons are

14

generally immune from lawsuits arising out of corporate affairs.

Second, the Wrongful Discharge from Employment Act provides the exclusive remedy for wrongful termination. Meech v. Hillhaven West, Inc. (1989), 238 Mont 21, 776 P.2d 488. All remedies provided by the Act run against the employer. The Act does not envision lawsuits against corporate employees, officers or shareholders. In this case there is no question that Buck's employer was Billings Montana Chevrolet. It was not the employees or shareholders of that corporation. Therefore, as mere shareholders or officers of Billings Montana Chevrolet, Stinson and Menholt were properly dismissed from the lawsuit.

Despite the fact that he agreed to dismissal in the record at the District Court level, Buck now attempts to argue that F.S. Enterprises was improperly dismissed. His argument on this issue closely parallels that set forth above relative to Stinson and Menholt. However, we need not consider the merits of this contention because Buck's appeal of this issue is barred by his acquiescence to the dismissal of F.S. Enterprises in the District Court.

Counsel for F.S. Enterprises, however, has moved this Court to award sanctions against Buck to reimburse it for costs and attorney fees associated with the appeal. Given the fact that in the record Buck previously conceded the propriety of the dismissal which was then granted by the District Court, we hold that the motion is well taken. Upon remand the District Court shall determine the costs and attorney fees associated with this appeal

15

and award F.S. Enterprises appropriate reimbursement. See e.g. Rookhuizen v. Blains Mobile Home Court (1989), 236 Mont. 7, 767 P.2d 1331.

**Conclusion**

This case is reversed and remanded for further proceedings in accordance with this opinion concerning the issue of Buck's dismissal in contravention of the written personnel manual of Billings Montana Chevrolet. Summary judgment dismissing Frontier Chevrolet Company, a Montana Corporation, Frank Stinson and Dennis Menholt is affirmed. The appeal of F.S. Enterprises' dismissal is dismissed and upon remand appropriate attorney fees and costs shall be assessed against Buck and his attorneys.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

Honorable Diane G. Barz did not participate in this decision.

16

Justice Terry N. Trieweiler concurs in part and dissents in part.

I concur with those parts of the majority opinion which affirm summary judgment for the defendants on the issue of fraud; affirm the dismissal of defendants, other than Billings Montana Chevrolet, Inc.; and remand this case to the District Court for further consideration of plaintiff's claim that he was discharged in violation of the employer's written personnel policies.

I dissent from that part of the majority opinion which holds that as a matter of law plaintiff's employer has "reasonable job related grounds for dismissal based upon . . . legitimate business reasons."

The constitutionality of the Wrongful Discharge From Employment Act was challenged in this Court in Meech v. Hillhaven West, Inc., 238 Mont. 21, 776 P.2d 488 (1989). In that case, an employee contended that the Act violated the Equal Protection Clauses of the Montana and Federal Constitutions by discriminating against a class of claimants without a rational basis, and that the Act violated prior case law by abrogating causes of action without providing a reasonable substitute.

In upholding the constitutionality of the Act, and in finding that adequate substitutes were provided for those rights that were lost, this Court concluded that even though damages were limited by the Act, greater job security was provided to employees by the "good cause" requirement that now exists under the Act for

17

termination of an employee. In balancing the rights of employers and employees to determine whether there was a rational basis for the Act, this Court concluded that the "good cause" protection of the Act was a significant factor. We stated:

> Under the Act, employers benefit because their potential liability is made more certain. Meanwhile, employees' control over the manner in which they are discharged remains, in part, as a result of the Act's "good employees' cause" requirement. The Act, in making this trade, is in no sense irrational. Therefore, classifications in the Act satisfy the requirements of the rational basis test.

Meech, 776 P.2d at 505.

With its decision in this case, the majority now begins the erosion of that same "good cause" requirement which was previously found to be the quid pro quo for rights which have been taken away from employees under the Act.

Good cause, as it pertains to this case, is defined in § 39-2-903(5), MCA, as ". . . reasonable job-related grounds for dismissal based on . . . legitimate business reason." It is not sufficient that a termination of employment be for a "legitimate business reason" unless that reason is reasonably related to the job that the employee performs.

If "legitimate business reason" by and of itself is sufficient to establish good cause, then the good cause requirement in the Wrongful Termination Act has been rendered meaningless and employees in the State of Montana receive nothing in return for the

rights they gave up under the Wrongful Discharge From Employment Act, § 39-2-901, _et_ _seq._, MCA.

The majority discusses the business interests of Frank Stinson at length, but fails to establish that the plaintiff's replacement as general manager of Billings Montana Chevrolet, Inc., was in any way job related.

The plaintiff was hired by the Billings auto dealership in 1973 as a salesman. He advanced through the ranks of employment and eventually served as the new truck manager, the new car sales manager, and general manager. He was general manager for nine years prior to his discharge. During that time the dealership operated successfully and profitably.

As pointed out by the majority, he was the only nondealer ever elected president of the Billings Automobile Dealers Association. He frequently ran the dealership during the absence of its owner.

There was no evidence in this record to indicate that plaintiff's replacement as general manager of the auto dealership was in any way related to his performance of that job.

Furthermore, there was no indication in this record that it was the employer's "legitimate business reason" for which the plaintiff was terminated. Plaintiff's employer was Billings Montana Chevrolet, Inc. It apparently operated successfully under plaintiff's management.

James Buck was terminated because of the business interests of Frank Stinson.

Mr. Stinson and his corporation, F.S. Enterprises, Inc., owned and operated a number of auto dealerships around the country. The person with whom he replaced the plaintiff was a successful sales manager of one of his other dealerships in South Dakota, and consistent with his business practice in those other dealerships, he promised that person an opportunity to take over operation and eventually acquire ownership of the next dealership he purchased. The decision by Stinson to make Dennis Menholt the general manager of his next dealership was made before he ever looked at Frontier Chevrolet, and before he ever met James S. Buck. It was made prior to the time that he and the corporation that he owned purchased the shares of the Billings dealership. Therefore, it had nothing to do with legitimate business reasons of the company which employed the plaintiff.

It is logically inconsistent to dismiss Frank Stinson and the corporation which purchased the shares of Billings Montana Chevrolet, Inc., because they were not technically the plaintiff's employer, but then to consider Frank Stinson's business interests as justification for termination of the plaintiff.

Under the undisputed facts, and based on the laws set forth in the Act, a strong argument could be made that plaintiff was entitled to summary judgment because the undisputed facts established that plaintiff was not terminated by Stinson for any job related reason, or for any legitimate business reason of the company for which he worked. However, the plaintiff was at least

entitled to a jury trial to determine whether under these facts, and according to the statutory definition of "good cause" plaintiff was properly terminated.

The majority opinion proceeds from the premise that the role of courts is to protect people from juries. I believe, on the contrary, that juries exist, and are provided for in both the federal and state constitutions, to protect people from arbitrary decisions of courts.

For that reason, I would remand this case to the District Court for a jury trial to determine whether plaintiff was terminated from his employment for "good cause" and I dissent from the majority opinion which grants summary judgment to the defendant on that issue.

_____
Justice

I concur in the foregoing concurrence and dissent of Justice Trieweiler.

_____
Justice

21