**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CINDY M. PEDERSEN, | No. 13-36007 |
| Plaintiff - Appellant, | D.C. No. 9:12-cv-00210-DWM |
| v. | |
| THE TJX COMPANIES, INC., DBA T.J. Maxx, | MEMORANDUM* |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, Senior District Judge, Presiding

Argued and Submitted October 14, 2015
Seattle, Washington

Before: KOZINSKI, W. FLETCHER, and FISHER, Circuit Judges.

Cindy Pedersen appeals the district court's grant of summary judgment in

favor of The TJX Companies, Inc. ("TJX"), in her diversity action alleging

---

\*       This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

wrongful discharge under Montana's Wrongful Discharge From Employment Act (WDEA), Mont. Code Ann. § 39-2-901, *et seq*. We reverse and remand.

**1.** Under the WDEA, a Montana employer may discharge an employee who has completed an initial probationary period only if it has "good cause" to do so. Mont. Code Ann. § 39-2-904(1)(b). Pedersen was an assistant store manager in TJX's T.J. Maxx store in Missoula and had worked at the store for ten years. In January 2012, TJX fired Pedersen upon learning that she had consumed alcohol with her subordinates after hours during a business trip to Kalispell. District Manager Denis Lattin stated in a declaration that Pedersen had violated TJX policies, including its conflict of interest policy, its heightened standards for managerial employees, and a strict TJX policy prohibiting managerial employees from consuming alcohol with subordinate employees during business trips. However, Pedersen testified in a sworn deposition that she had previously had drinks with her supervisors on TJX-sponsored business trips in Las Vegas and California. She also testified that Lattin told her that he had consumed alcohol with his subordinates in the past. There is a genuine dispute of material fact as to whether Pedersen's conduct actually violated TJX policies and whether TJX applied its policies to Pedersen arbitrarily. Fed. R. Civ. P. 56(a); *see Johnson v. Costco Wholesale*, 152 P.3d 727, 734 (Mont. 2007) ("This evidence . . . may lead a

jury to believe that Costco did not have good cause to discharge Johnson because it applied its employment policy in an arbitrary and capricious manner.").

Even if consumption of alcohol with an *underage* subordinate would have provided good cause to terminate Pedersen, it is disputed whether Pedersen knew that 19-year-old Cody Posio was underage. She testified in her deposition that she did not know Posio's age at the time of the Kalispell trip.

**2.** The district court also erred in concluding TJX's purported loss of trust in Pedersen constituted good cause under *Buck v. Billings Montana Chevrolet, Inc.*, 811 P.2d 537 (Mont. 1991). *Buck* emphasized an employer must have a "legitimate business reason" for terminating a general manager. *Id.* at 540–41. Under the WDEA, however, "[t]he legal use of a lawful product by an individual off the employer's premises during nonworking hours is not a legitimate business reason, unless the employer acts within the provisions of 39-2-313(3) or (4)." Mont. Code Ann. § 39-2-903(5). The district court did not consider how this statutory provision limits *Buck* and whether it would apply to Pedersen's claim. We leave it to the district court to address these questions in the first instance.

**3.** Finally, the district court erred in concluding there was not a triable issue on pretext. Under the WDEA, a given reason for discharge is not good cause if it "is a pretext and not the honest reason for the discharge." *Arnold v. Yellowstone*

3

*Mtn. Club, LLC*, 100 P.3d 137, 141 (Mont. 2004) (quoting *Mysse v. Martens*, 926 P.2d 765, 770 (Mont. 1996)). Pedersen testified in her deposition that Penny Dickey, the new store manager, wanted to get rid of older employees and those who had been there a long time. Pedersen said Dickey had told her and other employees that they would be "squeezed out." Several employees had either quit or been fired or demoted by Dickey. TJX admits that Dickey's communications to Lattin informed his decision to fire Pedersen. This case is therefore unlike *Johnson*. There, Johnson "presented no evidence to suggest that" his supervisor—whose statements indicated that the employer's stated rationale was pretextual—"had any contact with [the ultimate decision-maker] regarding Johnson." 152 P.3d at 735. Here, by contrast, there is a genuine dispute of material fact about the role Dickey played in Pedersen's discharge and whether TJX's stated reasons for firing Pedersen were "the true motivation for the discharge." *Id.* at 734.

**REVERSED** and **REMANDED**.